UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| PAMELA HAMPTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 1:15 CV 50 SNLJ (ACL) |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff Pamela Hampton brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration's ("SSA") denial of her application for Supplemental Security Income under Title XVI of the Social Security Act.

An Administrative Law Judge (ALJ) found that, despite Hampton's severe impairments of affective mood and anxiety disorders, degenerative changes of the lumbar spine, and obesity, she was not disabled as she had the residual functional capacity ("RFC") to perform other work that exists in significant numbers in the national economy, including work as a cleaner/housekeeper and a bottle packer.

This matter was referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 (b). A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary. Because substantial evidence supports the ALJ's opinion, the undersigned recommends that the decision of the Commissioner denying benefits be affirmed.

## I. Procedural History

On January 16, 2012, Hampton protectively filed an application for Supplemental Security Income (SSI), claiming that she became unable to work due to depression, suicidal thoughts, insomnia, and mitral valve prolapse on May 15, 2008.[1] (Tr. 178-83, 199.) Hampton's claim was denied initially. (Tr. 57.)

An administrative hearing was held on October 9, 2013, at which an independent medical expert—Dr. Thomas England, a clinical psychologist—testified. (Tr. 24-56.) Dr. England reviewed Hampton's medical records and listened to her testimony. (Tr. 38.) He testified that the record supports diagnoses of major depressive disorder "likely with some dysthymia[2] in between episodes", and generalized anxiety disorder. (Tr. 46-47.)

On October 24, 2013, Hampton's claim was denied in a written opinion by an ALJ. (Tr. 7-19.) She then filed a request for review of the ALJ's decision with the Appeals Council of the Social Security Administration (SSA), which was denied on January 30, 2015. (Tr. 4, 1-3.) Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

In the instant action, Hampton first claims that the ALJ erred in finding that her mental impairments "were not severe enough to meet Listings in Appendix 1, Part 404, Subpart P Regulation No. 4 Listings (12.04 and 12.06)." (Doc. 13 at 1.) Hampton next argues that the ALJ

---

[1]Hampton amended her alleged onset of disability date to January 16, 2012, at the administrative hearing. (Tr. 10, 26-27.) Hampton previously applied for disability benefits, alleging an onset date of May 15, 2008. (Tr. 62.) This application was denied on July 6, 2011, and she did not further appeal that denial. (Tr. 62-69.)
[2]A chronic mood disorder manifested as depression for most of the day, more days than not, accompanied by some of the following symptoms: poor appetite or overeating, insomnia or hypersomnia, low energy or fatigue, low self-esteem, poor concentration, difficulty making decisions, and feelings of hopelessness. *Stedman's Medical Dictionary*, 602 (28th Ed. 2006).

erred "in discrediting the opinion of Plaintiff's treating psychiatrist." *Id.*

## II. Applicable Law

### II.A. Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the

claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence which fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted). In other words, a court should not disturb an ALJ's denial of benefits if the decision "falls within the available zone of choice." *Buckner v. Astrue,* 646 F.3d 549, 556 (8th Cir. 2011). A decision may fall within the "zone of choice" even where the court "might have reached a different conclusion had [the court] been the initial finder of fact." *Id.* (quoting *Bradley v. Astrue,* 528 F.3d 1113, 1115 (8th Cir. 2008)).

**II.B. Determination of Disability**

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any other kind of substantial gainful

work which exists … in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work."

*Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id*. If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id*. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to

perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a. The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists. *See* 20 C.F.R. §§ 404.1520a (b) (1), 416.920a (b) (1). If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent." 20 C.F.R. §§ 404.1520a (b) (2), 416.920a (b) (2). The Commissioner must then rate the degree of functional loss resulting from the impairments in four areas deemed essential to work: activities of daily living, social functioning, concentration, and persistence or pace. *See* 20 C.F.R. §§ 404.1520a (b) (3), 416.920a (b) (3). Functional loss is rated on a scale that ranges from no

limitation to a level of severity which is incompatible with the ability to perform work-related activities. *See id.* Next, the Commissioner must determine the severity of the impairment based on those ratings. *See* 20 C.F.R. §§ 404.1520a (c), 416.920a (c). If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder. *See* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2). This is completed by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders. *See id.* If there is a severe impairment, but the impairment does not meet or equal the listings, then the Commissioner must prepare a residual functional capacity (RFC) assessment. *See* 20 C.F.R. §§ 404.1520a (c)(3), 416.920a (c)(3).

### III. The ALJ's Determination

The ALJ found that Hampton had not engaged in substantial gainful activity since January 16, 2012, the application date. (Tr. 12.)

In addition, the ALJ found that Hampton had the following severe impairments: affective mood and anxiety disorders, degenerative changes of the lumbar spine, and obesity. *Id.* Wilson had no impairment or combination of impairments that met or equaled in severity the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 13.)

As to Hampton's mental RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b); that is, she can lift and carry 20 pounds occasionally and 10 pounds frequently; she can sit, stand, and walk for a total of six hours in an eight-hour workday; the claimant must avoid ladders, ropes, scaffolds, and unprotected dangerous heights and machinery; she can no more than occasionally climb ramps and stairs; she can no more than occasionally stoop, kneel, crouch and crawl; the claimant is limited to simple and repetitive work without close interaction with the public and co-workers.

(Tr. 14.)

In formulating Hampton's RFC, the ALJ first performed a credibility analysis, and found that Hampton's subjective allegations of disability were not entirely credible. (Tr. 14-15.) The ALJ then discussed the medical evidence. (Tr. 15-16.) The ALJ discussed the opinion of consultative psychiatrist Naveed J. Mirza, and indicated that he was giving the opinion "little weight." (Tr. 17.)

The ALJ further found that Hampton does not have past relevant work. (Tr. 18.) He also concluded, based on vocational expert testimony, that there are jobs that exist in significant numbers in the local and national economies that the claimant can perform. *Id.*

The ALJ's final decision reads as follows:

> Based on the application for supplemental security income protectively filed on January 16, 2012, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

(Tr. 19.)

## IV.  Discussion

As noted above, Hampton raises two claims in this action for judicial review of the ALJ's decision denying benefits. Both of Hampton's claims relate to the severity of her mental impairments. She does not dispute the ALJ's findings with regard to her physical impairments. As such, the undersigned's discussion will be limited to Hampton's mental impairments.

### IV.A.  Listings

At step two, the ALJ found that Hampton had the following severe impairments: affective mood and anxiety disorders, degenerative changes of the lumbar spine, and obesity. (Tr. 12.) Hampton argues that the ALJ erred in finding that her mental impairments did not meet a listing at step three.

In the third step of the sequential evaluation, the ALJ must determine if the claimant has an impairment described in the listing of impairments. *See* 20 C.F.R. §§ 404.1520a (4)(iii), 416.920(a)(4)(iii); 20 C.F.R. pt. 404, subpt. P, App. 1. If the claimant has an impairment, or a combination of impairments, that match or are substantially equivalent to an impairment in the Listing of Impairments, the applicant is disabled per se. 20 C.F.R. 1520d; *Bowen v. City of New York,* 476 U.S. 467, 471 (1986); *Carlson v. Astrue,* 604 F.3d 589, 592 (8th Cir. 2010). Equivalence is to be determined "on medical evidence only." 20 C .F.R. § 1526b. To meet or equal a listing, the claimant must "'present medical findings equal in severity to *all* the criteria for the one most similar listed impairment.'" *Carlson,* 604 F.3d at 594 (quoting *Sullivan v. Zebley,* 493 U.S. 521, 531 (1990)) (emphasis in original).

When evaluating the severity of mental impairments, the ALJ must follow the special technique provided by 20 C.F.R. § 404.1520a. The ALJ determines the degree of functional limitation in four broad areas: activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. 20 C.F.R. § 404.1520a (c)(3). The ALJ is required to incorporate the results of this technique into their findings and conclusions. 20 C.F.R. § 404.1520a(e)(4). However, an ALJ does not err when she "fails to explain why an impairment does not equal one of the listed impairments as long as the overall conclusion is supported by the record." *Boettcher v. Astrue,* 652 F.3d 860, 863 (8th Cir. 2011).

Hampton argues that the ALJ incorrectly determined that she did not meet or equal Listing 12.04 or 12.06, which pertain to affective disorders and anxiety related disorders, respectively. Under Listing 12.04 eligibility may be established by meeting the severity requirements for paragraph A and paragraph B or by meeting the requirements of paragraph C. 20 C.F.R. pt. 404,

subpt. P, App. 1 § 12.04. In order to establish eligibility under 12.06, Hampton must satisfy paragraph A, and either paragraph B or C. 20 C.F.R. pt. 404, subpt. P, App. 1.

Hampton specifically challenges the ALJ's determination regarding the B criteria, which are identical for both Listing 12.04 and Listing 12.06. To satisfy the B set of criteria for Listing 12.04 and Listing 12.06, a claimant must show that she suffers at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration.

*Id.* Hampton argues that the ALJ erred by determining that plaintiff suffered only mild restriction in activities of daily living, only moderate difficulties in maintaining social functioning, only moderate difficulties regarding concentration, persistence, and pace, and no lengthy episodes of decompensation.

The regulations define the relevant terms as follows:

> Where we use "marked" as a standard for measuring the degree of limitation, it means more than moderate but less than extreme. A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with your ability to function independently, appropriately, effectively, and on a sustained basis.
> * * *
> 1. Activities of daily living include adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office.
> * * *
> 2. Social functioning refers to your capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals.
> * * *
> 3. Concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings.

> \* \* \*
> 4. Episodes of decompensation are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace.

*Id.*

The ALJ's decision fully addresses the reasons why Hampton did not satisfy the paragraph B criteria. (Tr. 13-14.) In determining that Hampton is mildly restricted in activities of daily living, the ALJ relied on Hampton's reports that she did not bathe as much as she used to, but did some household chores, cooked meals, swept, and did laundry. (Tr. 13, 32, 220.) Hampton also reported that she drove, watched television, read books, and shopped. (Tr. 218-19.) The ALJ acknowledged that the medical expert Thomas England, Ph.D., testified that Hampton had mild to moderate limitations in this area, and that she would have moderate limitations during a period of exacerbation. (Tr. 47.) The ALJ noted that no examiner observed that Hampton was consistently unhygienic or inappropriately groomed, or otherwise appeared to have more than mild restriction in activities of daily living. (Tr. 13.) Rather, the ALJ indicated that it was found that Hampton's hygiene and grooming were normal on multiple occasions. (Tr. 13, 270, 304, 311, 386, 388, 390, 393.) The ALJ's determination is also consistent with the opinion of the state agency psychologist, Scott Brandhorst, Psy.D., who found that Hampton had mild limitations in this area on March 28, 2012. (Tr. 293.)

With regard to the determination that Hampton has moderate difficulties in social functioning, the ALJ cited records indicating that Hampton got along fine with authority figures, and performed activities that required some social interaction, such as shopping and going to church. (Tr. 13, 33, 217-19.) The ALJ noted that Hampton's medical records do not reveal consistent problems interacting, and that it was observed she interacted appropriately with peers

and staff during a 2012 hospitalization. (Tr. 13, 304.) The ALJ pointed out that one examiner observed that Hampton appeared anxious during the interview, and that Dr. England testified that Hampton had moderate to marked limitations in this area. (Tr. 13, 47, 276.) In addition, Dr. Brandhorst expressed the opinion that Hampton had mild limitations in maintaining social functioning. (Tr. 293.) Thus, the ALJ properly weighed all the evidence in finding Hampton had moderate limitations in this area.

Regarding concentration, persistence, or pace the ALJ found that Hampton has moderate limitations. (Tr. 13.) The ALJ acknowledged Hampton's reports that she has significant problems in this area, and Dr. England's testimony that she has moderate to marked difficulties. (Tr. 13, 47.) Dr. England testified that the greater limitations were present during periods of exacerbation, but he noted that the medical records did not reveal these periods occurring frequently. (Tr. 47.) The ALJ stated that Hampton reported that she read books and shopped (Tr. 29, 218-19), which are activities that require concentration, persistence and pace; and that examiners observed mostly that she was alert and oriented (Tr. 13, 311, 398, 400). In addition, Dr. Brandhorst found that Hampton had moderate limitations in this area. (Tr. 293.) The ALJ, therefore, concluded that Hampton had moderate limitations in this area. (Tr. 13.)

Finally, the ALJ found that Hampton had experienced no episodes of decompensation of extended duration. (Tr. 14.) He pointed out that, although Hampton underwent inpatient psychiatric treatment in July 2012, it was for a period of less than one week. (Tr. 14, 303.) In addition, Drs. England and Brandhorst both found that Hampton had no extended episodes of decompensation. (Tr. 47-48, 293.)

Hampton also argues that she meets Listings 12.04 and 12.06 because of past suicide attempts. As Hampton notes, she was hospitalized due to suicide attempts by overdosing on three

occasions: May 2008, October 2008, and May 2009. (Tr. 310.) She was also hospitalized voluntarily due to suicidal thoughts from March 31, 2009, through April 3, 2009. (Tr. 337-340.) All of these hospitalizations occurred prior to Hampton's alleged onset of disability date. The SSA considered these records in connection with Hampton's prior claim and found that she was not disabled. (Tr. 62-69.) In addition, Dr. England testified that these hospitalizations "tended to be situational reactions, typically when the claimant felt that she was having difficulty in her marriage or felt that her family wasn't being supportive of her and her situation." (Tr. 45.)

Hampton was hospitalized on one occasion during the relevant period, from July 22, 2012, through July 26, 2012, due to suicidal ideation. (Tr. 303-06.) Hampton's drug screen was positive for PCP. (Tr. 303.) She reported increased anxiety and suicidal thoughts, and indicated she was thinking about overdosing on pills. *Id.* Upon discharge, Hampton was diagnosed with major depressive disorder, recurrent; generalized anxiety disorder; dysthymic disorder by history; rule out posttraumatic stress disorder by history; substance abuse (positive urine drug screen for PCP); and rule out malingering for personal gain; with a GAF score of 35[3] upon admission and 55[4] upon discharge. *Id.* Hampton was prescribed Effexor,[5] Trazodone,[6] Klonopin,[7] and Abilify.[8] (Tr. 305.) Counseling and drug rehab were also recommended. *Id.*

---

[3]A GAF score between 31 and 40 indicates some impairment in reality testing or communication (*e.g.,* some speech is at times illogical, obscure, or irrelevant); or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (*e.g.,* depressed person avoid friends, neglects family, and is unable to work). *See American Psychiatric Ass'n., Diagnostic and Statistical Manual of Mental Disorders* 34 (Text Revision 4th ed. 2000) ("*DSM IV-TR*").

[4]A GAF score of 51 to 60 denotes "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *See DSM IV-TR* at 34.

[5]Effexor is indicated for the treatment of depression. *See* WebMD, http://www.webmd.com/drugs (last visited July 15, 2016).

[6]Trazodone is indicated for the treatment of depression. *See* WebMD, http://www.webmd.com/drugs (last visited July 15, 2016).

Dr. England discussed this July 2012 hospitalization. (Tr. 45.) He stated that this hospitalization also appeared to be situational, as Hampton reported her family was not being supportive. (Tr. 43, 304.) Dr. England found that this hospitalization would not be considered an extended period of decompensation because it was only for a period of four days, and Hampton reported that symptoms started only a short period before her admission. (Tr. 47, 303.) The treatment notes following this hospitalization do not indicate that Hampton reported any suicidal thoughts, or otherwise experienced any periods of decompensation.

In sum, the ALJ conducted a thorough and well-reasoned analysis when concluding that Hampton's impairments did not cause at least two marked limitations or result in repeated episodes of decompensation. The ALJ's decision that Hampton's mental impairments resulted in moderate rather than marked limitations in the areas of social functioning and concentration, persistence, and pace fall within the available "zone of choice." Thus, the ALJ's determination that Hampton's mental impairments do not meet or equal a listing-level impairment is supported by substantial evidence.

Accordingly, the undersigned recommends that the decision of the Commissioner be affirmed as to this point.

**IV.B. Dr. Mirza's Opinion**

Hampton next argues that the ALJ erred in discrediting the opinion of her "treating physician" Dr. Mirza.

In evaluating opinion evidence, the Regulations require the ALJ to explain in the decision the weight given to any opinions from treating sources, non-treating sources, and non-examining

---

[7]Klonopin is indicated for the treatment of panic attacks. *See* WebMD, http://www.webmd.com/drugs (last visited July 15, 2016).
[8]Abilify is indicated for the treatment of depression. *See* WebMD, http://www.webmd.com/drugs (last visited July 15, 2016).

sources. *See* 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii). The Regulations require that more weight be given to the opinions of treating physicians than other sources. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). A treating physician's assessment of the nature and severity of a claimant's impairments should be given controlling weight if the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). *See Forehand v. Barnhart*, 364 F.3d 984, 986 (8th Cir. 2004). Ordinarily, the medical opinion of a one-time examining physician does not alone constitute substantial evidence upon which an ALJ may base his ultimate decision of disability. *Cox v. Barnhart,* 345 F.3d 606, 609–10 (8th Cir. 2003) (citing *Jenkins v. Apfel,* 196 F.3d 922, 925 (8th Cir. 1999)).

Hampton saw Dr. Mirza for a one-time consultation at the request of the Commissioner on March 2, 2012. (Tr. 276-81.) Dr. Mirza expressed the opinion that Hampton was able to understand and remember instructions; but was unable to sustain concentration and persistence in tasks, or interact socially and adapt to her environment. (Tr. 275.)

A "treating source" is defined as a "physician, psychologist, or other acceptable medical source" who provided the claimant with medical treatment or evaluation on an ongoing basis. 20 C.F.R. §§ 404.1502 and 416.902; *Tindell v. Barnhart,* 444 F.3d 1002, 1005 (8th Cir. 2006). Hampton never saw Dr. Mirza again after her March 2012 consultative examination. Dr. Mirza is not, therefore, a treating physician whose opinion is entitled to controlling weight.

The ALJ discussed Dr. Mirza's opinion, and assigned it "little weight." (Tr. 17.) The ALJ explained that Dr. Mirza observed some signs of anxiety and depression, yet under "Report of Systems", he stated that Hampton had only mild depressed mood, mild decreased energy, no thought disruption, no somatic complaints, mild anxiety, no irritability, and only mild problems

with sleep. (Tr. 17, 276-77.) The ALJ stated that these indications of only mild to no symptoms are not consistent with Dr. Mirza's opinion of disabling symptoms. (Tr. 17.) The ALJ further found that Dr. Mirza's opinion is not supported by the objective findings of other examinations. *Id.*

The undersigned finds that the ALJ properly evaluated the opinion of Dr. Mirza. Dr. Mirza did note some signs of depression and anxiety on mental status examination. For example, Hampton was "anxious and fidgety", seemed to have difficulty making eye contact, had low self-esteem, her mood was anxious, and she was found to have poor insight. (Tr. 280.) As the ALJ noted, however, Dr. Mirza indicated that Hampton had only a mildly depressed mood, mildly decreased energy, no hopelessness, no thought disruption, mild anxiety, no irritability, and only mild sleep problems. (Tr. 276-77.) Dr. Mirza also noted that Hampton had no thoughts to hurt herself or others, and had fair judgment and impulse control. (Tr. 280.) Dr. Mirza then completed a form in which he simply wrote "yes" next to the category "understand and remember instructions"; and wrote "no" next to the categories "sustain concentration and persistence in tasks" and "interact socially and adapt to their environment." (Tr. 275.) *See Wildman v. Astrue,* 596 F.3d 959, 964 (8th Cir. 2010) (finding that an ALJ properly discounted an opinion in part because it was conclusory, consisted of checklist forms, cited no medical evidence, and provided little to no elaboration); *Holmstrom v. Massanari,* 270 F.3d 715, 721 (8th Cir. 2001) (noting that the checklist format of an RFC assessment limited its evidentiary value); SSR 06–03p (noting that the factors to be considered in weighing an opinion include "the degree to which the source presents relevant evidence to support an opinion" and "how well the source explains the opinion").

The ALJ also found that Dr. Mirza's opinion was inconsistent with the findings on other examinations. After Hampton's hospitalization in July of 2012, there is little evidence of

significant psychiatric symptoms. For example, Hampton received treatment at Southeast Health Center of Ripley County, where she was diagnosed with back pain, depression, and anxiety. (Tr. 398-402.) Hampton's psychotropic medications were refilled. *Id.* No psychiatric symptoms, however, were noted on examination. *Id.* Instead, Hampton was noted to be alert and oriented, and in no acute distress. (Tr. 400-01.) On Hampton's most recent visit, on September 11, 2013, she had "no concerns/complaints," and no psychiatric symptoms were found on examination. (Tr. 398.) Treatment notes from Samuel Medical Clinic dated January 4, 2012, through August 15, 2012, similarly reveal no significant psychiatric symptoms, other than complaints of insomnia. (Tr. 269, 389-93.) These records also note Hampton was in no acute distress, and that she was appropriately groomed and dressed. *Id.* Thus, the ALJ's decision to assign little weight to the opinion of one-time consultative psychiatrist Dr. Mirza is supported by substantial evidence.

As to Hampton's mental RFC, the ALJ concluded that Hampton was limited "to simple and repetitive work without close interaction with the public and co-workers." (Tr. 14.) "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of h[er] limitations.'" *Tucker v. Barnhart,* 363 F.3d 781, 783 (8th Cir. 2004) (quoting *McKinney v. Apfel,* 228 F.3d 860, 863 (8th Cir. 2000)). *See also Anderson v. Shalala,* 51 F.3d 777 (8th Cir. 1995).

In determining Hampton's mental RFC, the ALJ also discussed relevant credibility factors. Credibility questions are "primarily for the ALJ to decide, not the courts." *Baldwin v. Barnhart*, 349 F.3d 549, 558 (8th Cir. 2003). "If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, the Court should defer to the ALJ's credibility determination." *Gregg v. Barnhart*, 354 F.3d 710, 713 (8th Cir. 2003). The ALJ discredited the credibility of

Hampton's subjective complaints of disabling symptoms for the following reasons: (1) she has a poor work history; (2) she testified that she was able to engage in significant daily activities, such as performing household chores, cooking, shopping, and driving; (3) she did not seek significant psychiatric treatment during the relevant period; and (4) the objective medical evidence does not support her allegations. (Tr. 15-16.)

The mental RFC formulated by the ALJ is supported by substantial evidence in the record as a whole. The ALJ properly weighed the opinion evidence, and assessed the credibility of Hampton's subjective complaints. The objective medical evidence reveals that, aside from a brief hospitalization in July of 2012, Hampton sought no treatment from a mental health professional. The treatment notes from her primary care providers do not reveal the presence of significant psychiatric symptoms. After Dr. Mirza provided his opinion, state agency psychologist Dr. Brandhorst expressed the opinion that Hampton was capable of performing "1-2 step jobs on a sustained basis away from stress/others." (Tr. 295.) The ALJ's RFC determination is consistent with Dr. Brandhorst's opinion, and the opinion of medical expert Dr. England that Hampton had moderate to marked limitations in the areas of social functioning and concentration, persistence and pace.

The ALJ then properly relied on the testimony of a vocational expert to find that Hampton could perform other work existing in significant numbers in the national economy with her RFC, including jobs as a cleaner/housekeeper and bottle packer. (Tr. 18, 51-52.) *See Robson v. Astrue*, 526 F.3d 389, 392 (8th Cir. 2008) (holding that a vocational expert's testimony is substantial evidence when it is based on an accurately phrased hypothetical capturing the concrete consequences of a claimant's limitations). Thus, the ALJ's decision finding Hampton not disabled is supported by substantial evidence.

## RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the decision of the Commissioner denying Pamela Hampton's applications for Supplemental Security Income under Title XVI of the Social Security Act be **affirmed**.

The parties are advised that they have fourteen (14) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636 (b) (1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. *See Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990).

s/Abbie Crites-Leoni
ABBIE CRITES-LEONI
Dated this 21st day of September, 2016.   UNITED STATES MAGISTRATE JUDGE